UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHERYL MARIE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:04CV1096 CDP |
| | ) |
| DePAUL HEALTH CENTER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Cheryl Marie Jones alleges that her employer, DePaul Health Center, discriminated against her because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Jones contends that during her seven-year tenure with DePaul, DePaul failed to promote her, subjected her to a hostile work environment, and ultimately terminated her all on account of her race. DePaul now moves for summary judgment. Because the undisputed evidence fails to demonstrate that any of the allegedly adverse actions were motivated by race, I will grant summary judgment in favor of DePaul.

### Facts

Jones is an African-American female who was employed as a medical coding specialist in DePaul's Health Information Management Department (HIM) from July 14, 1997 until she was terminated on April 21, 2004. There are no disputes about

the facts that led up to her termination.

On March 16, 2004, Irene Garrison, a lead coder in HIM, reported to Jones' supervisor, Sheryl Maurer, that she had observed Jones sleeping on the job the previous day. DePaul has detailed behavior expectations for its employees, which are listed in a written Code of Conduct. Sleeping on the job is prohibited under this Code of Conduct, and is a terminable offense.

In response to Garrison's report, Maurer summoned Jones to a meeting on March 17, 2004. Debra Daniels-Ellis, who is responsible for oversight of HIM, and Norine Kasperik, then director of Human Resources for DePaul, also attended this meeting. Although Jones never admitted to falling asleep on the job, she did acknowledge that she had "nodded" and felt drowsy because of a new blood pressure medicine that she was taking. She also acknowledged that she had been approached by Maurer in late 2003 concerning sleeping on the job. Maurer, Daniels-Ellis, and Kasperik concluded that Jones should receive Level III counseling instead of termination. Under DePaul's disciplinary process, Level III counseling is the final step before termination. Additionally, they placed her on medical leave until she could obtain a full release from her treating physician.

Immediately following this meeting, Jones sought out Garrison at her desk and confronted her about reporting the sleeping incident to Maurer. According to

Jones, she was upset that Garrison, whom she regarded as a friend, would go behind her back to report her to Maurer. Among other comments, Jones told Garrison, "what goes around comes around," "you reap what you sow," and "God don't like ugly." Garrison perceived these statements as threats, and reported the incident to Maurer.

On April 13, 2004, when Jones returned from medical leave, Jones again met with Maurer, Daniels-Ellis, and Kasperik to discuss her verbal confrontation with Garrison. Jones admitted to making the statements to Garrison but argued that they were not intended as a threat. Jones was then suspended pending further investigation into the incident by Human Resources. Human Resources' investigation consisted of reviewing Garrison's report as well as a written statement from the only witness to the confrontation, Alison Henry.

Based upon this investigation, Daniels-Ellis, in consultation with Human Resources, concluded that Jones' action had violated the Conduct Towards Others section of DePaul's Code of Conduct. The section provides, in relevant part:

> You are expected to value and respect all patients, co-workers,
> visitors, physicians, managers. The following behavior is prohibited:
>
> > Behavior or threats, to engage in behavior that would present an
> > imminent danger or cause harm to the health, safety or welfare
> > or any patient, visitor, physician, manager or employee.
> > ...

>Discourtesy or disrespect to patients, visitors, physicians, managers, or employees.

Any violation of this section is punishable by termination. Based on this violation, Daniels-Ellis made the decision to terminate Jones' employment, effective April 21, 2004.

Jones challenged her termination through DePaul's employee grievance process, but her appeals were denied. The Equal Employment Opportunity Commission issued its right-to-sue letter on May 25, 2004, and Jones subsequently filed this suit on August 18, 2004.

## Discussion

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or

other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

According to Jones, her termination was the culmination of a series of racially discriminatory acts against her by DePaul that included failure to promote and the creation of a hostile work environment. Each of these allegations raise a distinct cause of action and thus will be addressed in turn.

### 1. Wrongful Termination

Where, as here, there is no direct or circumstantial evidence of discrimination, a discrimination claim must be analyzed under the burden-shifting method of proof described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under this standard, the burden first falls on Jones to establish a prima facie case of discrimination. Id. To meet this burden, Jones must show: (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) "similarly situated individuals outside the protected class were treated differently." Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004). If Jones successfully establishes a prima facie case, DePaul must produce "a legitimate, non-discriminatory reason for

the adverse employment action." If DePaul meets this burden of production, "the presumption raised by the prima facie case disappears, and the burden shifts back to [Jones] to show that the articulated reason was a pretext for discrimination." Id.

For purposes of this motion, I will assume that Jones has successfully made out a prima facie case of discrimination, and will instead focus on whether DePaul's stated reason for Jones' termination was a pretext for discrimination. According to DePaul, Jones' termination was based solely on her violation of the company's Code of Conduct. Daniels-Ellis stated that the threatening nature of Jones' comments towards Garrison, coupled with the fact that she had just been placed on Level III counseling for a separate violation of the Code of Conduct, warranted her termination.

Jones does not deny any of the factual bases on which DePaul made its termination decision. Indeed, Jones admits that she verbally confronted Garrison on March 17, 2004 and said the precise phrases she was accused of saying. Instead, Jones argues that DePaul mistakenly interpreted these phrases as a threat to Garrison. Jones contends that "you reap what you sow," "what goes around comes around," and "God don't like ugly" are all references to the Bible's golden rule.[1]

---

[1] Even one with a very distant familiarity with the Bible would most likely take issue with Jones' invocation of the golden rule to explain her statements. The golden rule refers to the oft-quoted biblical passage "do to others as you would have them do to you." Luke 6:31 (New

Jones also notes that the only other witness to this confrontation, Alison Henry, did not perceive these statements as a threat.

This Court does not "sit as a super-personnel [department] reviewing the wisdom or fairness of business judgments made by employers, except to the extent those judgments involve intentional discrimination." Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995). In other words, whether DePaul's enforcement of its own Code of Conduct was fair is irrelevant as long as its stated reason for Jones' termination was not a front for an ulterior, racially discriminatory motive.

The Eighth Circuit explained this principle in Gill v. Reorganized School District R-6 Festus, Missouri, 32 F.3d 376 (8th Cir. 1994). In Gill, the defendant school district terminated the employment of an African-American substitute teacher after she allegedly called a student a "disparaging racial name." The student had reported the incident to another teacher, who had reported the student's complaint to an assistant principal. The assistant principal investigated the complaint by speaking with the student, but did not speak with the substitute teacher. The

---

International Version). While "you reap what you sow," "what goes around comes around," and "God don't like ugly" could contain a hint of the golden rule, these statements more closely resemble another, more blunt, biblical quote: "If anyone injure his neighbor, whatever he has done must be done to him: fracture for fracture, eye for eye, tooth for tooth. As he has injured the other, so is he to be injured." Leviticus 24:19-20.

-7-

assistant principal then informed the superintendent of the student's accusation. Without further review, the superintendent removed the substitute teacher's name from the school district's substitute teacher list. 32 F.3d at 377.

The substitute teacher brought a wrongful termination action against the school district under Title VII. She maintained that she never made the comment to the student, and challenged the superintendent's reliance on the assistant principal's report. The Eighth Circuit held that the substitute teacher's allegation failed to prove that the school district's stated reason for her discharge was a pretext for discrimination and affirmed summary judgment for the defendant. The Court reasoned as follows:

> Whether [the plaintiff] did or did not engage in the conduct reported to the superintendent and whether the superintendent should have relied on the assistant principal's investigation are 'irrelevant because [this evidence] merely questions the soundness of the [superintendent's decision].' Incorrect thinking on the superintendent's part does not prove that school district's explanation is a pretext. We are not permitted to second guess the superintendent or to correct an unwise decision if the superintendent gave an honest, nondiscriminatory explanation for his behavior.

Id. at 379.

Like the substitute teacher in Gill, Jones contests the soundness of DePaul's stated reason for her termination. Jones alleges that DePaul erred by choosing to

-8-

believe Garrison's version of the events of March 17, 2004 over Jones' contrary interpretation. As the Court clearly held in Gill, the fact that an alternative decision could have been made does not, alone, establish pretext.

Instead, Jones must produce some evidence that would suggest that Daniels-Ellis, Maurer, and Kasperik were guided by a racially discriminatory motive, rather than Jones' Code of Conduct violation, when they decided to terminate her employment. Jones' allegations fall short of meeting this burden for several reasons. First, Jones fails to identify a single action or comment by any of the three decision-makers from which a jury could conclude that their decision was based on Jones' race. The only mention of such a comment came during Jones' deposition, when she stated that Daniels-Ellis, who is African-American, made a "racial statement" to her. However, upon further questioning, Jones could not remember the statement, nor has she been able to recall the statement since the time of her deposition. Such self-serving, unsubstantiated allegations, without more, cannot defeat DePaul's motion for summary judgment. Bass v. SBC Communications, Inc., 418 F.3d 870, 872-73 (8th Cir. 2005).

Second, Jones' reference to two incidents in which white employees allegedly violated DePaul's Code of Conduct but were not terminated fails to implicate any of the three individuals that terminated Jones' employment. In the first incident, Jones

alleges that a white employee named Heather yelled at Garrison but did not get fired. In the second incident, Jones alleges that a co-worker named Cheryl, also a white employee, instigated a verbal and physical altercation with Jones over an open door in the office yet was not terminated. Even assuming that Jones' recollection of these incidents is accurate, she has failed to allege that any of the decision-makers in her case were involved in either of these incidents. Indeed, Jones' own testimony demonstrates that Heather's conduct was not reported to any supervisor. Thus, I fail to see how these allegations, if true, demonstrate that Maurer, Daniels-Ellis, or Kasperik intentionally discriminated against Jones when they decided to terminate her employment. See Cardenas v. AT&T Corp., 245 F.3d 994, 1000 (8th Cir. 2001) (holding that evidence of discrimination that cannot be attributed to the decision-makers at issue is irrelevant to show pretext by those same decision-makers).

When viewed as a whole and in a light most favorable to Jones, her allegations, at best, demonstrate that DePaul's decision to fire her was based on an unfair interpretation of the facts surrounding her confrontation with Garrison on March 17, 2004. Under Title VII, however, cases must be decided on evidence of racial discrimination, not on the basis of fairness. Torlowei v. Target, 401 F.3d 933, 935 (8th Cir. 2005) (per curiam). Accordingly, Jones' wrongful termination claim must fail.

## 2. Failure to Promote

Jones also alleges that DePaul discriminated against her on account of her race by failing to offer her training opportunities during her course of employment. According to Jones, she aggressively pursued cross-training to become an inpatient coder beginning in 2000, but was consistently denied.[2] Jones alleges that DePaul overlooked her repeated requests for additional training and instead offered the training opportunity to several white contract hires. She alleges that when DePaul eventually offered her inpatient coding training, Garrison simply threw the training manual at her and refused to answer any of Jones' follow-up questions.

To establish a failure-to-promote claim under Title VII, Jones must show that she (1) is a member of protected class, (2) was qualified and applied for a promotion for which her employer was seeking applicants, (3) that despite her qualifications, she was rejected, and (4) that similarly situated employees outside the protected class were promoted at the time her request was denied. Lyoch v. Anheuser-Busch Companies, Inc., 139 F.3d 612, 614 (8th Cir. 1998). Her allegations fall short of satisfying these elements.

---

[2]According to Sheryl Maurer, the typical progression that coders in DePaul's HIM department proceeds as follows: (1) outpatient coding, (2) emergency room coding, (3) outpatient surgery coding, (4) inpatient coding, and finally (5) inpatient Medicare coding. At the time of Jones' termination, she was completing the transition from emergency room coding to outpatient surgery coding.

Notably, Jones admitted in her deposition that individuals both inside and outside the protected class received inpatient training during Jones' employment. Jones' testimony revealed that several white employees as well as an African-American employee participated in inpatient coding cross-training before Jones was offered the opportunity. With these facts, I am unable to infer that Jones' treatment was motivated by her race.

Further, Jones has failed to rebut DePaul's legitimate non-discriminatory reason for their denial of her requests for inpatient coding cross-training. According to DePaul, there was simply no opportunity for Jones to receive this training between the fall of 2003 and March 17, 2004. Jones had just transferred from ER coding to outpatient coding in the fall of 2003, and her new department was experiencing a severe backlog at this time. DePaul claims that because of this backlog, staffing restrictions, and Jones' own extensive absence of thirty-eight days during the last quarter of 2003, it simply did not have the resources to cross-train Jones. Jones has failed to contest any of these stated reasons proffered by DePaul, and thus I am unable to dismiss them as a pretext for discrimination. For these reasons, Jones' failure-to-promote claim must fail.

### 3. Hostile Work Environment

Jones also contends that she was subjected to harassment on account of her race while working for DePaul. To establish such a claim, Jones must establish the following: "(1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus between the harassment and her protected-group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt and effective remedial action." Austin v. Minnesota Mining & Mfg. Co., 193 F.3d 992, 994 (8th Cir. 1999).

Jones' hostile work environment claim centers on Garrison's alleged acts of spying. According to Jones, once Garrison assumed the position of lead coder in 2003, she became obsessed with monitoring Jones' every move at the office. Jones describes how Garrison would leave notes on Jones' desk whenever Jones left her workstation. Jones also accuses Garrison of peeking around corners to see if Jones was awake and alert at her desk. Jones complained of Garrison's behavior to Maurer, but nothing was done to remedy the situation.

Even if these actions were severe and pervasive enough to constitute harassment, Jones' claim would still fail because she has not established any causal nexus between her treatment and her race. As Jones conceded in her deposition,

Garrison's behavior changed when she was promoted to lead coder in 2003. Before that time, Jones and Garrison "talked," "laughed," and "planned things together." Thus, Garrison's zealous micro-managing of Jones' work appears triggered by Garrison's promotion, not by racial animus. Additionally, Jones' own testimony reveals that Garrison harassed all of the coders in the same manner, regardless of their race. In fact, Garrison's behavior had earned her the title "FBI" by Jones' co-workers.

In sum, Jones has failed to demonstrate that Garrison's treatment was motivated by Jones' race. For this reason, Jones' hostile work environment claim must fail.

## **Conclusion**

The undisputed evidence shows that Jones cannot recover on any of her claims, and DePaul is entitled to judgment as a matter of law.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant DePaul Health Center's motion for summary judgment [# 23] is granted.

A separate order of dismissal is granted this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 1st day of <u>December</u>, 2005.